UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE D. SEBREE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:09-cv-1349-WTL-TAB |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | |

**ENTRY ON JUDICIAL REVIEW**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Michelle D. Sebree seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

**PROCEDURAL HISTORY**

Sebree filed her application in October 2005 alleging disability beginning September 25, 2005, due to both physical and mental impairments. Specifically, Sebree alleges that she is disabled due to severe back pain, narcolepsy, obstructive sleep apnea, asthma, anxiety, and depression. Sebree's application was denied both initially and upon reconsideration, whereupon she requested a hearing before an ALJ. The hearing, at which Sebree was represented by counsel, was held on September 8, 2008, before ALJ James R. Norris. In addition to Sebree's testimony, the following individuals testified as medical experts at the hearing: Richard A. Hutson, M.D., an orthopedic surgeon; Lee Fischer, M.D., a general physician; and Jack E.

Thomas, Ph.D, a board certified clinical psychologist. The ALJ issued his decision denying Sebree's application for benefits on October 8, 2008. The Appeals Council upheld the ALJ's decision and denied Sebree's request for review on September 25, 2009. Sebree then filed this timely appeal.

## BACKGROUND AND MEDICAL HISTORY

Sebree was thirty-eight years old at the time of her alleged disability onset date in 2005. At that time, she had completed two years of college and had worked as a full-time registered nurse for most of her adult life.

Since 1983, Sebree has undergone five back surgeries, including scoliosis surgery, a lumbar discectomy, a revision microdiscectomy, and a 360 anterior-posterior fusion. She testified that approximately twenty days a month her back "slips out," causing severe back pain and numbness down her right leg. In addition, she claims that on some days she is unable to get out of bed and must get someone to assist her. She uses a cane or a walker about half the time, and testified that she believes she can only stand or walk for twenty minutes without experiencing severe pain or dizziness.

Since 2004, Sebree has had multiple MRIs that have shown various degrees of disc problems in her back. She underwent four surgeries in an attempt to alleviate the pain caused by her bulging or otherwise injured discs. Her most recent surgery occurred in 2005, when Dr. Rick Sasso removed a small disc herniation that had been causing a mild compression of her S1 nerve. After this surgery, the doctor reported that Sebree was able to return to normal activity. However, Sebree continued to complain of pain. At a January 11, 2006, visit, Dr. Sasso noted that a December 2005 MRI showed advanced degeneration of the L5-S1 disc, but the L4-5 disc

appeared satisfactory. Dr. Sasso recommended physical therapy and possible L5-S1 disc replacement if therapy failed.

On June 26, 2008, Sebree underwent an additional MRI. The MRI indicated "posterior osteophytic spurring with an associated disc bulge . . . at the L4-L5 level. Bilateral facet hypertrophy . . . .[and] moderate spinal stenosis." The MRI report also noted "mild to moderate bilateral foraminal narrowing." Record at 671. In September 2008, Sebree's family physician wrote a letter to her attorney indicating that Sebree walked with pseudoclaudication due to nerve root impingement at the L4-5 level and around the right S1 nerve root. In his opinion, the 2008 MRI confirmed his findings.

At the hearing before the ALJ, Dr. Richard Hutson, the orthopedic medical expert, testified that the objective medical evidence did not show that the Plaintiff's disc disease caused the appropriate loss of neurological function to qualify Sebree under Listing 1.04. However, at the time of the hearing, for reasons undisclosed in the record, Sebree had not yet entered Exhibit L, the 2008 MRI report, into the record. The report was made available to the ALJ after the hearing, but the ALJ made the decision not to submit it to Dr. Hutson and ask whether it changed his opinion regarding Sebree's condition. Consequently, the most recent diagnostic tests that Dr. Hutson had access to was the MRI from December 2005.

In addition to Sebree's back pain, she has also been diagnosed with sleep apnea, for which she uses a CPAP device. She has received testing that is suggestive of narcolepsy, and she has complained that her asthma causes her problems, but each disease has responded well to medication. Finally, Sebree has complained of heart problems. In 2007, testing revealed inappropriate sinus tachycardia (IST) and postural orthostatic tacycardia syndrom (POTS);

however, Sebree was assured that these conditions have a benign clinical course and should spontaneously resolve.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

4

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## **DISCUSSION**

At step one of the ALJ's analysis, he concluded that Sebree had not engaged in substantial gainful activity since September 25, 2005, the alleged onset date of her disability. At step two, the ALJ found Sebree's severe impairments to include back pain from prior surgeries, narcolepsy, obstructive sleep apnea, asthma, and POTS. In addition, he noted that she has been diagnosed with anxiety and depression. However, the ALJ concluded that these impairments did not cause more than a minimal limitation in her ability to perform basic mental work activities, and her symptoms had improved with medication. Consequently, he found her psychological ailments to be non-severe.

At step three, the ALJ found that none of Sebree's impairments or combination of

impairments met or medically equaled one of the listed impairments. In step four, the ALJ determined that, based on the entire record, Sebree has the residual functional capacity to lift and carry ten pounds, sit six hours during an eight hour work day, and stand and/or walk two hours during an eight hour work day. Although he noted that she should avoid concentrated exposure to inhaled irritants, fumes and gases due to her asthma, he found that her "residual functional capacity is consistent with the ability to perform a range of sedentary work." Record at 21. Finally, at step five, the ALJ determined that considering her residual functional capacity and the skills from her past relevant work, Sebree is capable of performing other occupations currently available in the national economy.

Sebree advances several objections to the ALJ's decision, each of which is addressed below.

### *Failure to Comply with Social Security Ruling 96-8 and 96-6*

Sebree first argues that by failing to submit the 2008 MRI report to Dr. Hutson for his review, the ALJ violated both Social Security Ruling 96-8, which imposes on adjudicators a duty to consider all of the relevant evidence in the record, and Social Security Ruling 96-6, which states that the ALJ should obtain an updated medical opinion from medical experts where additional medical evidence is received that could modify the expert's finding. The ALJ acknowledged in his decision that the 2008 MRI report was submitted after Sebree's hearing but before the decision was issued, but he chose not to provide the report to Dr. Hutson to determine whether it changed his opinion regarding Sebree's condition. The ALJ then rejected the opinion of treating physician Dr. Walker, which was rendered after review of the 2008 MRI report, in favor of the opinion of Dr. Hutson, which was rendered without the benefit of that report.

6

It is true that the ALJ is required to re-contact medical sources only if he finds that he cannot make a determination without additional information or if he finds that new evidence might change the expert's initial opinion. *See* 20 C.F.R. § 404.1512(e). But it is also true that an ALJ should "not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apel*, 227 F.3d 863, 870 (7th Cir. 2000). In this case, the 2008 MRI report suggests that Sebree's condition had worsened since her 2005 MRI. The 2005 MRI report, which is the most recent MRI that Dr. Hutson had access to, makes no mention of stenosis of the lateral recesses or neuroforamina bilaterally at the L4-L5 level. The 2008 MRI report, on the other hand, states that "[t]here is moderate spinal stenosis. There is mild to moderate bilateral foraminal narrowing." Record at 671. Further, on September 30, 2008, Sebree's treating physician, Dr. Walker, opined that Sebree had "chronic back pain and lower extremity radicular pains from multiple back surgeries and spinal stenosis." *Id.* at 667. Additionally, he stated his belief that she was experiencing "pseudoclaudication due to nerve root impingement at L4-L5 and around the right S1 nerve root . . . [which] are confirmed on her most recent MRI from June 26, 2008." *Id.* If Dr. Hutson had been provided access to the updated MRI, his analysis would have reflected the changes in Sebree's condition and he could have more accurately discussed any corresponding neurological deficits. However, the ALJ disregarded Dr. Walker's analysis of the 2008 MRI report and chose not to submit the MRI report to Dr. Hutson for further analysis. This was an improper substitution of the ALJ's medical opinion for that of a medical expert that requires remand.[1]

---

[1]Ironically, one reason the ALJ gave for disregarding Dr. Walker's opinion was that he was a family physician, not an orthopedic specialist, and yet the ALJ–who is presumably not a physician of any type–felt comfortable substituting his own judgment for that of Dr. Walker.

*Improper Treatment of Mental Impairments*

Sebree next argues that the ALJ erroneously ignored Sebree's complaints of depression and anxiety in his residual functional capacity (RFC) determination. However, the ALJ adequately discussed Sebree's depressive symptoms at step three of his analysis, which addresses her severe and non-severe impairments. At step three, the ALJ proceeds through a discussion of the four broad functional areas set out in the disability regulations for evaluating mental disorders. In concluding that Sebree's mental impairments cause no more than "mild" limitations in the first three areas and no limitation in the fourth functional area, the ALJ properly considered the opinions of the consulting psychologist and the testifying psychologist, as well as Sebree's own statement that her mental impairments did not significantly affect her ability to work and had improved with increased dosages of Zoloft. The ALJ's determination that Sebree's psychological impairments were not severe and did not affect her RFC was supported by substantial evidence.

*Credibility Determination*

Finally, Sebree claims that the ALJ failed to consider her persistent efforts to obtain pain relief, which should have enhanced her credibility under Social Security Ruling 96-7. Social Security Ruling 96-7 states that a "medical record demonstrating an individual's attempts to seek

---

The pitfalls of doing so are aptly demonstrated by the ALJ's reasoning. As noted above, Dr. Walker opined that the 2008 MRI report confirmed that Sebree experienced pseudoclaudication. In rejecting that opinion, the ALJ noted that "there is no mention of any pseudoclaudication at all" on the MRI report. However, it is the Court's understanding that pseudoclaudication is a *symptom*–essentially leg pain while walking–and as such pseudoclaudication will never be mentioned in an MRI report. However, spinal stenosis, which can cause pseudoclaudication, is diagnosable by an MRI and was, in fact, diagnosed by Sebree's 2008 MRI, thus (as explained by Dr. Walker) providing objective evidence of the *symptom* that had been reported by Sebree.

medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain . . . for the purposes of judging the credibility of the individual's statements." Sebree emphasizes her risky surgeries, the nerve blocking injections she has received, and the multiple medications that she takes as support for her claim that she has made many attempts to alleviate her pain. Sebree believes the record supports her credibility, but she argues that the ALJ dismissed factors in her favor as irrelevant without an explanation as to why these factors were either irrelevant or not credible.

With regard to subjective symptoms such as pain, if a claimant has a medically determinable impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). Additionally, because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

> The reasons for an ALJ's credibility determination must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to

9

> make a conclusory statement that "the individual's allegations have been
> considered" or that "the allegations are (or are not) credible." The determination
> or decision must contain specific reasons for the finding on credibility, supported
> by the evidence in the case record, and must be sufficiently specific to make clear
> to the individual and to any subsequent reviewers the weight the adjudicator gave
> to the individual's statements and the reasons for that weight.

*Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (quoting SSR 96-7p). Given this standard, it is clear that the ALJ in this case failed properly to articulate his reasons for finding Sebree less than fully credible.

In reaching his decision, the ALJ stated, "[s]ome credit can be given to the claimant's subjective complaints, but full credit is not sufficiently reasonably consistent with the overall evidence in the record." Record at 23. The ALJ went on to state that "the objective and clinical medical evidence of record fails to fully support the claimant's allegations to the extent alleged." *Id.* This type of conclusory statement is insufficient to support a credibility determination. *Brindisi*, 315 F.3d at 787. This statement is followed by a discussion of the medical evidence of record and an explanation of the weight the ALJ gave to each physician's opinion. The ALJ recognized that Sebree does have a history of multiple back surgeries, however, the ALJ placed undue emphasis on the fact that the "only physician" she visited after her 2006 surgery was her treating physician for her back—not her surgeon. The ALJ goes on to infer that because she did not return to her surgeon after 2006, "her symptoms [must have] improved," and consequently, "she is not as limited as she alleges." *Id.* at 26. But in reaching this conclusion, the ALJ disregarded Sebree's own testimony. For example, she testifies that her pain is often so severe that she cannot even turn over to get out of bed. She also stated that on a regular basis, the pain in her back registers as a six out of ten on the pain scale, even with medication. In addition, in Sebree's disability questionnaire, she discusses her inability to perform most daily activities

10

without fatigue or pain. She claims she is unable to drive more than a short distance without experiencing severe pain, and often she is unable to drive at all. Nevertheless, the ALJ determined that because her allegations of pain could not be "objectively verified with any reasonable degree of certainty," she is not precluded from performing sedentary work. However, as noted above, the regulations prohibited the ALJ from rejecting Sebree's testimony regarding the severity of her symptoms "solely because the available objective medical evidence does not substantiate [her] statements," 20 C.F.R. § 404.1529(c)(2), once he found that she had a medically determinable impairment that could reasonably be expected to produce the symptom. Beyond the generalized statement that he did not find her statement to be fully credible based on the objective evidence in the record, the ALJ articulates no rational reason for disregarding Sebree's testimony the she experiences disabling pain. The failure to do so should be remedied on remand.

## **CONCLUSION**

For the reasons discussed at length above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 10/08/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification